FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
AUG 26 2019
JEFFREY P. COLWELL
CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. ______________________________
(To be supplied by the court)

Annette Y. Ruffin______________________________, Plaintiff

v.

BLDG Management
______________________________,

______________________________,

______________________________,

______________________________, Defendant(s).

(*List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.*)

---

**EMPLOYMENT DISCRIMINATION COMPLAINT**

---

**NOTICE**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**A. PLAINTIFF INFORMATION**

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Annette Y. Ruffin 1038 Lake Dr. Snellville, GA 30039
(Name and complete mailing address)

720-298-1139 annetteruffin40@gmail.com
(Telephone number and e-mail address)

**B. DEFENDANT(S) INFORMATION**

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1: BLDG Management 205 Detroit St. Denver, Co.80206
(Name and complete mailing address)
*"D. STATEMENT OF CLAIMS."* 303 996-2333
(Telephone number and e-mail address if known)

Defendant 2: ______________________________
(Name and complete mailing address)

______________________________
(Telephone number and e-mail address if known)

**C. JURISDICTION**

*Identify the statutory authority that allows the court to consider your claim(s): (check all that apply)*

X Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. (employment discrimination on the basis of race, color, religion, sex, or national origin)

___ Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, et seq. (employment discrimination on the basis of a disability)

X Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, et seq. (employment discrimination on the basis of age)

X Other: (*please specify*) wrongful termination + retaliation

**D. STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action and the specific facts that support each claim. If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: (Additional pages attached) Title VII + ADEA

The conduct complained of in this claim involves the following: (*check all that apply*)

___ failure to hire
___ different terms and conditions of employment
___ failure to promote
___ failure to accommodate disability
X termination of employment
X retaliation
___ other: (*please specify*) ___

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

___ race
___ religion
___ national origin
X age
___ color
___ sex
___ disability

Supporting facts:

Please see attached response to position statement. It summarizes the actual facts. I have been mistreated and discriminated against by BLDG (Leah, Darren, Desire, Evelyn.) Leah + Darren terminated me.

Please see attach reason + focus points. I deserve my day in court and I have the right to sue.
See additional pages.

**E. ADMINISTRATIVE PROCEDURES**

## *"D. STATEMENT OF CLAIMS."*

9/14/18

Re: EEOC Charge No. 541-2018-02043 Annette Ruffin
v. BLDG Management Co.

Response to Position Statement

The Charging Party has complained that the Respondent discriminated against her on the basis of her age. She complained that a group of younger peers made disparaging age-related comments (of which the Respondent was aware, and tolerated); that she was subject to disparate treatment in her day to day work environment; that her authority was undermined when the Respondent promoted one of this group over the Complainant's objections; and that she was subjected to retaliation for engaging in protected activity when she was terminated.

Age- related comments

The Respondent has stated that they are unaware of any of the disparaging age-related comments that the Complainant detailed in her complaint.

The Complainant has provided the name of witness(es) to the disparaging age-related comments made by, or in the presence of, management in her witness list (below)

Disparate Treatment

The Respondent failed to address ANY of the specific examples of disparate treatment of which the Charging Party complained. The Respondent instead provided a straw man argument regarding the younger comparator being treated worse than the Complainant in that the younger comparator managed larger properties. The Complainant gave specific examples of this discriminatory, hostile work environment, including (but not limited to): being held to tighter deadlines; being subject to hyper monitoring in comparison to her younger peer; and a property being removed from the Complainant's portfolio and given to the younger comparator in order to allow the younger comparator to meet her bonus at the expense of the Complainant. The Respondent has failed to provide a legitimate, non-discriminatory reason for treating the Complainant in a disparate fashion, and the Complainant requests that the EEOC making a reasonable cause finding.

Please note that the Complainant has provided witnesses who will verify that the younger comparator was not required to turn in reports etc on time, and will provide documentation that the Complainant was pushed to meet deadlines, and that the younger comparator did not turn Monday strategic items in at all.

Undermined authority

The Complainant charged that the Respondent undermined her authority when allowed the promotion of a younger subordinate over the Complainant's objections. The Respondent has provided the EEOC with a handbook detailing hiring and promotion decisions, and stated that the Complainant should not have had the final decision in the promotion of one of her subordinates. The handbook the Respondent provided the EEOC was created after the termination of the Complainant. She has provided the 2015 Handbook which was in effect while she was employed there, and which documents that she should have been the final decision maker in the decision regarding the promotion of EC. She has also provide a number of witnesses that will testify that based on policy at the time of

# *"D. STATEMENT OF CLAIMS."*

the Complainant's employment, the Complainant should have been the final decision maker in the promotion of E.C.

The Respondent further states that the testimony of that same person (E.C.) whose promotion the Complainant objected to, is the basis for the investigation (which started while the Complainant was on vacation, immediately following her verbal complaint of discrimination) which resulted in the Complainant's termination.


Termination

    A.   Retaliation

The Complainant has argued that the Respondent retaliated against her for complaining of discrimination when she was terminated. The Respondent argued that she did not complain of discrimination during her review/meeting with Mr. Everett, and therefore he could not have retaliated against her.

 The Charging Party's complaint of discrimination to Mr. Everett was verbal, and made during a one on one meeting which she did not record. As such, she cannot provide written/recorded documentation to refute the Respondent's claim that she did not complain of discrimination to Mr. Everett during this meeting- however:

1. The Respondent has failed to address the specific disparate treatment claims of the Complainant *at all*, which lends strength to the Charging Party's complaint.
2. The temporal proximity of the Complainant's meeting with Mr. Everett to her termination is highly suspect and indicative of a retaliatory scenario. While the Respondent states that they briefly discussed bad debt during the meeting (complaint provides evidence, report Income statement Vs. Actual which shows only one property showed an increase in bad debt, for only one month) the Complainant's review was positive and she received a raise. The decision to terminate the Complainant clearly came right after this meeting.
3. The Respondent acknowledges that the decision to terminate the Complainant came right after this meeting, but states that Complainant was terminated for failing to process skips as skips in a timely fashion, and for being dishonest about it. The "evidence" the Respondent provides for this is an investigation conducted by the younger employee whom the Complainant has charged was being given preferential treatment, and statements supposedly made by the younger employee whose promotion the Complainant had tried to block (this promotion was endorsed by the younger employee being given preferential treatment, who also conducted the investigation), along with an unsubstantiated statement by another unnamed employee. The Complainant reiterates that this "investigation" took place while she was on vacation, while she would be unaware of the investigation and therefore unable to defend herself. The Respondent's evidence is unsubstantiated, and unreliable.
4. The Respondent has provided no evidence to show that skips were being held to the end of the month at the complainant's properties, nor that the skip process was handled any differently at the Complainant's properties than at other properties.
5. The Complainant provides the following evidence to support her argument that she did *not* hold off processing skips, nor did she advise subordinates to do so:
6. The Complainant has provided multiple witnesses who will state that she did not hold off on processing skips until the end of the month, as well as an email stream documenting her telling her subordinates that they MUST immediately move out tenants who have turned in keys.

# *"D. STATEMENT OF CLAIMS."*

B. Cat's Paw Theory

The Respondent argues that the Respondent couldn't have discriminated against the Complainant because the same manager who hired her also agreed to her termination. Under Cat's Paw Theory, the Respondent can be held liable for discrimination *even if there is no evidence that the ultimate decision maker acted in a discriminatory manner*, if that decision maker relied on untrue reports from a biased manager. As such, even if the EEOC determines that there is not enough evidence to support the Complainant's complaint that her termination was retaliatory, the Respondent clearly states that it relied on the parties whom the Complainant implicates as discriminating against her, both for conducting the investigation, and providing the statements which were the basis for the Complainant's termination. The Respondent has provided no other evidence to support its claim that the Complainant held off on processing skips in violation of company policy, nor that she told others to do so. As the Respondent has provide no legitimate, non-discriminatory reason for terminating the Complainant, the Complainant asks that the EEOC to make a reasonable cause finding.

**Witnesses**

- **Nancy Martin**-(age 61) Community Director- 720-334-0168- will testify that Complainant did not push skips to the end of the month, and EC being confused and her performance. Also terminated.
- ***Estella Flores***-Salcido- Contact regarding move-outs and intimidating her and work deficiencies and age comments from EC
- ***Juanita Gurule*** "Garcia"- 720—319-9883 Can testify that Complainant did not push skips to month's end. During Leah's investigation, she provided Leah with a written statement that the Complainant never asked her to push skips to end of month, but when she was on the southside she was asked to do this for years. She worked under Ms. Farjardo for years. Wrote email to Leah regarding move-outs.
- **Brittney Ornelas "Garcia"**- Community Director at Aspen Park- Will testify that Complainant didn't push skips to end of month. Mr. Everett himself at one point asked Brittney and Charging party not to go below 95.5% before the move outs. Mr. Everett ask them to hold all roof leak move-outs so lender inspector would not walk these apartments.
- ***Janeen Harvell- Regional Director-720-323-8133***-Contact regarding EC deficiencies noted by Charging Party in Friday Regional Meetings and and that final hiring decisions are typically left with the Regional and Community Directors.

- ***Dennis Padilla- Regional Coordinator***-720-625-0107 Will testify that she didn't push skips to end of month, EC deficiencies, and that final hiring decisions are typically left with the Regional and Community Directors.

- ***David Sarabia, Regional Maintenance Supervisor-720-243-2339-*** Contact witness regarding EC deficiencies not by Charging Party in Friday Regional Meetings.

- **Daniela Ruiz**-720-331-5002 will testify that Complainant did not push skips to end of month
- ***Victoria Pena- Janeen Harvell- Regional Director-720-323-8133***-Contact regarding EC deficiencies noted by Charging Party in Friday Regional Meetings and and that final hiring decisions are typically left with the Regional and Community Directors.
  and Aspen Park move-outs for Lender inspection. Victoria worked for Ms. Farjardo.

## *"D. STATEMENT OF CLAIMS."*

- ***Crystal Medel-*** *Contact regarding Ms. Fajardo neglect to give her and the team, Score cards, Reviews and Support. Charging party held to a higher standard*
- ***Lena Felix-****Contact regarding Ms. Fajardo neglect to give her and the team, Score cards, Reviews and Support. Charging party held to a higher standard*

The Complainant requests an extension until 9/26/18 to provide missing witness phone numbers and additional supporting documents. She is travelling and will not have access to them until that time.

# *"D. Statement of Claims."*

## *Particulars:*

*Undermining the Complainant's authority:*

- *Leah and Desiree expressed their desire to promote on of the Complainant's direct reports, Evelyn Castro, to Property Manager. The Complainant explained that she did not believe Ms. Castro was ready as she had still had many deficiencies, including but not limited to in banking, qualifying residents, leadership, communication, work place gossip, delinquency failures and ability to get along with the team, which needed to be corrected. This decision should have been the Complainant's to make as Ms. Castro's immediate Supervisor, but Ms. Castro was promoted anyway.*

***RE: EC Promotion & Other concerns with HR-***

*Charging party and Nancy Martin talk to EC- on 11/3/17 regarding deficiencies. Email between Charging Party and Leah 11/17/17 regarding concerns of promotion. Charging party requested BLDG-U training. Charging Party- Email 12/19/17, Leah wanting sign-off on Self Nomination from Regional for EC promotion. Charging party verbally spoke to Leah and Leah advise Charging Party to sign the form. As she was in a hurry to get her hired at Vista Park. Email 01/08/18-Evelyn being pulled over to Vista Park without Nancy or Charging Party's Permission to work on Vista Park recruitment and operations. Although Nancy gave EC a good review, she clearly states at the end that she needs to work on collecting more internal Debt. Work on new method for AR and delinquency. (See attached EC 11/28/17 review.)*

*Leah HR practices are bias and unjust to younger people. Leah and Des would sit in meetings and target their victims. Nancy 59, Victoria (Just because Ms. Farjardo didn't like her.) Dennis Padilla 41, Juanita 41 and others that worked for ConAm that worked either worked with me or for me at some point. Leah and Ms. Farjardo both have been known to retaliate against anyone who disagrees with them or voices their opinion making the employees uncomfortable. Leah, Ms. Farjardo and Mr. Everett all show favoritism towards certain employees regardless of their job performance.*

2

RE: Evelyn - Message (HTML)

RE: Evelyn?

She has a lot of great qualities and I want her to be one of my Managers one day. I [illegible] her and start her on the BLDG Development. Speaking of EAP, I want to be careful with [illegible] as she has told me she called the EAP line as well. I want to do a short term goal and long term [illegible] with her. [illegible]

**From:** Leah Chelst
**Sent:** Tuesday, November 7, 2017 9:52 AM
**To:** Annette Ru[illegible] <annette@[illegible]apartments.com>
**Subject:** RE: Evelyn?

Oh my goodness how awful. I can't imagine going through that having just had a baby. Will you please refer her to the EAP? I can only imagine she will need as much support as she can get.

I think that is a fair assessment. Can we get her on the BLDG development plan ASAP? I know we are going to need managers and I feel if she is able to overcome these obstacles she is next up as far as internal candidates.

Thank you for providing this.

Best,

**Leah Chelst**
Human Resource Manager

**BLDG Management**
[illegible] Ave, Suite [illegible], Denver, CO [illegible]

3

RE: Evelyn? - Message (HTML)

FILE MESSAGE

Ignore Delete Reply Reply All Forward Meeting More Team Email Done To Manager Reply & Delete Move Rules Actions Assign Policy Mark Unread Categorize Follow Up Translate Find Related Select Zoom

Annette Ruffin

RE: Evelyn?

To Leah Chelst

**From:** Annette Ruffin
**Sent:** Tuesday, November 7, 2017 9:48 AM
**To:** Leah Chelst <leah@[illegible]management.com>
**Subject:** RE: Evelyn?

She is returning today. She was crying when I talked to her and she is going through with her husband. They just bought a house and they are having relationship issues. She said she needed money so she is returning early. She said, her husband is unfaithful and not supportive. She is having troubles with finding a baby sitter and she is stressed.

I was thinking I could put her over at Aspen but she still needs to show me she has what it takes to be a manager. She is not confident on owner calls. She needs to be able to get her delinquency down to zero and make sure she does not participate in work place gossip and learn to be a great leader that can trust and depend on.

**From:** Leah Chelst
**Sent:** Tuesday, November 7, 2017 8:31 AM
**To:** Annette Ruffin <annette@[illegible]apartments.com>
**Subject:** RE: Evelyn?

Annette

Checking in on this again, I know you said she was having some personal issues so wanted to get some confirmation on this please

Thank you,

**Leah Chelst**

4

Fw. BLDG's Newest Project

MX-4110N_20171213_172530.pdf (549 KB)

Team-
I dont have acces to a printer to sign off on this I know she has an Interview tomorrow Evelyn still needs leadership training She has many deficiencies that I believe she needs to work on first before she is ready. If you choose her I will need to find a replacement before she goes. As I cant take a hit at TL right away -)

From: Nancy Martin
Sent. Wednesday, December 13, 2017 5:10 PM
To: Caitlin Ceaser
Cc: Annette Ruffin
Subject: RE: BLDG's Newest Project

Hi Caitlin

Evelyn is interested in a promotion to a CD position and is ok with an Aurora location

Please see the self-nomination attached

Thank you in advance for your consideration!

Nancy Martin
Community Director

FW: replacements - Message (HTML)

FW replacements

Message 2018 STAFF PROPOSED- -TL.xlsx (24 KB)

Leah- Per our conversation on Friday. This is what Nancy sent to me. She is interviewing JoJo from Hidden Lake today
Also today Nancy she said Evelyn is being pulled without notice Pulled for budgets and interviews Nancy needs notice please if she is being pulled for VP. Lets discuss tomorrow please

From. Nancy Martin
Sent. Thursday, January 4, 2018 4 29 PM
To Annette Ruffin <annette@bldgapartments.com>
Subject: FW: replacements

Annette,

I really would like to have Victoria replace Evelyn as my ACD-she has expressed an interest in taking this position She has not yet filled out a self-nomination as thought her pay would put her out of the running?

I understand that Estela has also expressed an interest in the position, but in talking to her, she only did so if Victoria was not coming over as she would prefer to be trained by Victoria for the next level

I strongly believe if we are to satisfy Oak Coast, we need to bring the property back up in occupancy and keep delinquent low and cannot lose ground due to the personnel change next week.

In order to do so in a short time frame, I need to keep Estela in her place as my strongest leasing agent-she knows her job well and will begin leasing more now that

***RE: Holding on to Move-outs till End of the Month-EC***

**(See Email Time-line on move-outs/skips &n NTV emails 9 pages)** May EC and Nancy Martin struggled with receiving keys and inspection forms from her <u>leasing team.</u> Nancy Martin received a written warning on 4/19/17 and was very worried about KPI reporting and operations. Charging Party monitored reports to balance KPI accuracy. Charging party found KPI Net/Gain Occupancy not matching with Availability in 5/22/2017. Juanita emailed Charging Party 08/31/17 of concerns, while EC was out on maternity leave. Nancy Martin emailed Charging party about leasing finding keys in the offices for scheduled move-outs and skips. Charging party had meeting with EC and Nancy to gain control of move-

outs/skips on 11/3/17. Charging party also had private meeting with EC and Nancy about EC's deficiencies on 11/3/17. EC confirmed move-out process with leasing team in an email 11/15/17. EC email 12/19/17 still questioning turning in keys and move-out process. EC email NTV-12/20/17 confirming move-outs and skips. Let the record show that EC did not understand the move-out process and legal. In fact, she quotes her own understand about moving out move-outs at the end of the month. Records don't reflect this. EC was confused. Charging party did not give her this direction and also emails her, to move them out immediately.

Charging Party sent ACD Action Plan to Darren and Investors. (See ACD Action Plan while EC on Maternity Leave). * Note- MEC & Mid-MEC Month End Close- Complete all WRITE-OFFS.

*Note all teams are required to go to Fair Housing training which sometimes covers Evictions. Also, there is Eviction training by THS Law Firm.

#1. The "law" – Respondents policies and procedures fail to reflect on LAWFUL procedures must apply. Charging party always adheres to State law See below laws from THS law firm- Respondents Client

**SURRENDER v. ABANDONMENT**

The first question to ask yourself when a tenant moves out prior to the lease expiration is whether the tenant has actually vacated the unit. Ideally, the tenant has either: 1) turned in the keys, 2) given written notification that he moved out, 3) or both. Under any of these three scenarios the landlord has the absolute right to take possession of the premises, change the locks, and prepare the premises to be re-rented. The landlord has the right to take possession because the tenant has legally surrendered the premises. Surrender is the tenant's absolute admission that he has moved out. Even if the tenant leaves personal belongings behind, the landlord has the right to throw them away. As long as there is a surrender, the landlord will not face liability for disposing the tenant's belongings. When there is more than one tenant on the lease it can be more difficult to determine a surrender. It may be possible that one tenant intends to surrender the premises to the landlord but the other tenant intends to stay. Unless the lease provides otherwise, the landlord must have a surrender of all the tenants in order to retake possession. This means that 1) all tenants turn in all the keys, 2) all tenants sign a notification that they have moved out, or 3) all tenants sign the notification and turn in the keys. The landlord still might have the legal right to retake possession if there is not a surrender from all tenants, but the issue becomes a little more complicated. This leads into the issue of abandonment. It could be that one tenant surrenders (by turning in his keys) and the other tenant abandons (doesn't turn in the keys, but moves out). The result is the same, i.e. the landlord retakes possession, but the analysis is more involved. The landlord has to determine if the second tenant has abandoned.

**LAW OF ABANDONMENT**

The law of abandonment is more involved than surrender. Surrender is straightforward, but abandonment usually involves a more detailed analysis of the situation. Abandonment has 2 requirements: 1) proof of the act of abandonment (moving out) and 2) the intent to relinquish the premises to the landlord. As long as there is an abandonment, the landlord can legally re-take possession of the premises without going through the eviction process. The "act" of abandonment is established by the fact that the tenant is no longer physically present at the property. The "intent" of physically present at the property. The intent of abandonment is much more difficult to determine because intent is in the mind of the tenant. As we all know, it can be impossible to know what's in the minds of our tenants!

Under Colorado law the key to the abandonment issue is intent and whether the tenant by his words and conduct abandoned the premises. Whether the tenant has abandoned is question of fact and burden of proof is on the landlord.

There are various indicators to determine whether the tenant's intent is to abandon. The following list is not exhaustive. This is a list of common indicators, but each situation is different and must be analyzed on a case-by-case basis.

1) the landlord's knowledge of the tenant's whereabouts;
2) the amount and nature of personal property left in the premises;
3) any and all communication between the landlord and tenant;
4) the length of tenancy in comparison to the time the tenant has been absent;
5) the status of mail delivery, utility billings, and house keys;
6) the payment of rent.

This list is not comprehensive. There are any number of other unique situations that come up that would satisfy all of these factors for abandonment but the tenant has not abandoned.

•

7

# Counseling Record

**Employee Name:** Nancy Martin **Date:** 04/19/17

**Department:** Timber Lodge **Issuing Manager's Name:** Annette Ruffin

**Purpose:** To provide a formal opportunity for a supervisor to help an employee understand where improved performance is expected, and to provide a written record of each counseling session:

○ **Written Warning**

○ **Final Written Warning**

◉ **Other** Verbal Warning

*The company has absolute discretion to determine the appropriate corrective action depending on the facts and circumstances.*

**Problem Definition:** List below specific reason(s) why this person is being counseled and the impact the problem has on the company

Nancy is having trouble in the following areas:
Leading/Managing & Employee conflict-Office team has no clear expectations or direction, they are unorganized.
Planning and executing- No goals are being set for the community or the teams on KPI and Delinquency.
Motivation and Initiative- Nancy is not motivated enough and relies on RPM or Asst. Mgr. to be proactive for her.

**Prior Warnings:** (verbal or written) occurred on the following date(s) and involved the following facts and circumstances.

March 17th- On-site visit during training
March 22nd 2017- Email: Subject TL Red Zone Plan
April- During Quartery review
April 13th-One on One

**Improvement Required:** List below specific actions the employee must take to correct the situation or behavior.

- Set the example for your team by being an engaged Leader, give your leasing team clear expectations. Gain control of your team by helping them get organized and make sure they are prioritizing their daily duties this will allow them to be more effective and allow you to be able to measure leasing performances. Outline leasing, marketing and resident retention goals for them individually and as a team. The team is not meeting basic property performance benchmarks like; customer service, opening and closing property, market surveys, following-up on links and leads. This must improve to ensure the Community is running successfully.
- Execute and be proactive by planning meetings to come up with new strategies, that will help your Community maintain a high level of Occupancy, low Delinquency, and great Resident Retention. Have a plan in place (Community Analysis & Action Plan) to help you control Operations and measure Property performance. This will help you be more prepared for ownership calls. You need to measure Key performance indicators and execute deficiencies immediately every week to help you improve your overall. Stay on track with your plan at all times. Learn how to deal with employee conflict right away.
- Motivate you team and take the initiative to show residents that you care. Curb appeal and resident issues must improve. Condition your team and residents to take Timber Lodge to a new level. Take the initiative to troubleshoot problems and resolve them on your own. Walk your property, send demands and letter to residents that are not compliant.

HR. Payroll. Benefits.

8

11/3/17
Evelyn Concern + Return to work

Attendees: Evelyn, Nancy

Meeting Objectives:
- Discuss issues with team
- Gauntlet Concerns email 8/24/17
- Team building

Notes:
- #1 Move acts - Back from 8/4
- Delinquency improvement + goals
- Generated leads process
Crying + sad. Even apologized.

Pricilla + Estella expressed concerns about her being mean, + talk about it. Estella + Evelyn husbands work together + she getting in personal business. Intimidating her. The biggest that Evelyn don't come back.

Evelyne surprised said Estella + team were making lots of mistakes. She needs to make corrections.

Collections + IPI calls + updating are available. No correct training. Take to help process correct. Meet Tuesday topics - Address all tools

Action:
- ✓ No back date moves acts must get date legally + policy
- Collections, use - Return plan + process
- ✓ Billing - update notes, Key role to make phone calls
- Leads need to Generate right away in entry

9

**Evelyn Castro**

From: Evelyn Castro
Sent: Wednesday, December 20, 2017 2:39 PM
To: Leah Chelist; desiree (desiree@bldgapartments.com); Caitlin Ceaser
Subject: Thank you

Hello Ladies,

I wanted to take this opportunity to thank you personally for the time spent with me earlier in the day. I have thought quite a bit about the possibility of becoming a manager, in addition to the contributions I could offer, I would learn a lot from you and benefit greatly from the experience and talent.

Again, I appreciate the time you ladies took to interview me. I'm very interested and look forward hearing the decision you will make.

Sincerely,

Evelyn Castro
Assistant Community Director

Timber Lodge Apartments o BLDG Management
1769 Coronado Pkwy N | Thornton, CO 80229
303-287-5531 (Phone) | 303-287-1282 (Fax)
www.timberlodgeapts.com | www.bldgapartments.com

BLDG MANAGEMENT

***Retaliation***
*The Respondent retaliated against the Complainant for engaging in protected activity when, immediately upon her return from vacation, and less than two weeks following her complaint about age discrimination to Darren Everett, she was terminated, despite having received a positive annual review and pay raise less than two weeks previous to her termination.*

- *January 12, 2018 - The Complainant had her annual review meeting with Darren Everett. During the meeting she received a positive review and pay raise. Following the review, Darren asked the Complainant how things were going. The Complainant expressed that she believed she did not fit in with the younger clique, and that they, as well as Leah Chealist and Darren Everett himself, treated her worse than the others.*
- *January 19th -24, 2018 The Complainant went out on vacation*
- *January 25th- Darren Everett asked the Complainant to meet him at Starbucks. He told her that she was going to resign. When she said she did not intend to resign, he told her that was the way it was going to be, and had her turn over her company phone, which he used to send a resignation email to the office employees from her email account. The Complainant's final check was cut on 1/24/18.*

**Focus points of Retaliation:**

Bad Debt- Is a result of Scheduled move-outs, Skips/Abandonment, Early terminations, down units and Evictions,

Contributable factors are: Timing with Write-offs, Timing issues from collections, Property Trend/History and current issues at the community this can contribute to Bad Debt. Timber Lodge started off with a high Bad Debt issue. Mr. Everett was aware of these challenges when he bought the property. Mr. Everett also knew the property Trend during the Holiday season on these types of Class "C" (old built in 1970-1985) properties. Record shows move-outs/skips being handled properly even though EC was many times confused about this policy. Charging party denies any acts of telling her employees to hold on to move-out till the end of the month or anytime to gain in Occupancy. Charging Party has no benefit from this accusation. Let the record show Mr. Everett was so defensive when I brought up Aspen Park units up to him, asking Charging Party and directing/approving us to stay above 95.5% cutting corners. Mr. Everett cut me off when I asked him, "Is this about Aspen Park lender inspection?"

10

Mr. Everett failed to mention anything to Charging Party about Bad Debt in her reviews or in individual meetings. Mr. Everett's 11/26/17 email talks about A/R for Aspen Park but does not specifically talk about move-outs or Bad Debt. Charging party had not recollection as to which community he was talking about to be able to research Skip/Move-outs. Mr. Everett gave Charging Party less than 72 hours to look into an indirect question about an up-tick in move-outs. Mr. Everett allowed Leah to conduct audit from January 15th-January 24th knowing Charging Party and Leah had a heavy exchange in an Operations Meeting regarding Brittney Ornealas at Aspen Parks demotion. A meeting the then Leah started to mistreat Charging party because of the heated debate. (Witness-Victoria & Brittney) Mr. Everett often cut corners and contacted his Community Directors or Regionals directly on bad business decisions. Subpoena all of Ms. Farjardo's Move-out, Bad Debt reports in the SOUTH region.

Property Occupancy is contributable: Market conditions, Physical and Economic Occupancy.

| Timber Lodge | Bad Debt | Total Monthly Move-outs | Aspen | Total Monthly Move-outs |
|---|---|---|---|---|
| Jan | $ 37,000.00 | | | |
| Feb | $ 37,000.00 | | | |
| Mar | $ 7,094.46 | | | |
| Apr | $ 19,442.70 | | | |
| May | $ 4,359.47 | | | |
| Jun | $ 17,268.86 | | $ 4,965.99 | |
| Jul | $ 3,630.69 | | $ (108.95) | |
| Aug | $ 6,806.61 | | | |
| Sep | $ 8,884.32 | | $ 3,956.90 | 23 |
| Oct | $ 2,883.38 | | $ 12,208.17 | 23 |
| Nov | $ 6,346.77 | | $ 4,921.97 | 13 |
| Dec | $ 10,290.49 | | $ 5,102.73 | 11 |

***Bad Debt Timber Lodge:***

| **Bad Debt-October** | |
|---|---|
| Bad Debt/ Write-Offs | (6,190.40) |
| Bad Debt Collections - Internal | 3,197.06 |
| Bad Debt Collections - Agency | 159.96 |
| **Bad Debt** | **(2,833.38)** |

| **Bad Debt-November** | |
|---|---|
| Bad Debt/ Write-Offs | (7,803.52) |
| Bad Debt Collections - Internal | 1,212.20 |
| Bad Debt Collections - Agency | 244.55 |
| **Bad Debt** | **(6,346.77)** |

| **Bad Debt-December** | |
|---|---|
| Bad Debt/ Write-Offs | (12,089.54) |
| Bad Debt Collections - Internal | 792.20 |
| Bad Debt Collections - Agency | 1,006.85 |

11

**Bad Debt** **(10,290.49)**

Copy of 2017.02 - Timber Lodge Variance Report - Excel

File Home Insert Page Layout Formulas Data Review View Help Tell me what you want to do

F130

Income Statement - Budget vs Actual
Timber Lodge Apartments
Accrual Basis
Feb 2017

| Account Name | Feb 17 Actual | Budget | $ Variance | % Variance | MTD Var. Notes | YTD( Jan 17 - Feb 17 ) Actual | Budget | $ Variance | % Variance | YTD Var Notes | Annual Budget |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lease Renewal - Concessions | 0 00 | (1 710 00) | 1 710 00 | 100 00% | Lease renewal variance due to none given in February | 0 00 | (1,710 00) | 1,710 00 | 100 00% | | (16,425 00) |
| Employee Apartment - Concessions | (166 00) | (215 00) | 49 00 | 22 79% | | (166 00) | (215 00) | 49 00 | 22 79% | | (2,365 00) |
| Other - Concessions | 0 00 | (200 00) | 200 00 | 100 00% | | 0 00 | (200 00) | 200 00 | 100 00% | | (2,200 00) |
| **Total Concessions** | **(866.00)** | **(4,685.58)** | **3,819.58** | **81.52%** | **Total concessions variance results from migration.** | **(866.00)** | **(4,685 58)** | **3,819.58** | **81.52%** | | **(53,374.63)** |
| **Bad Debt** | | | | | | | | | | | |
| Bad Debt/ Write-Offs | (37,086 57) | (10 256.25) | (26,830 32) | -261 60% | Unfavorable variance due to takeover audit resulted in 26 move outs-some pending from january and early terminations/skips that caused high write offs | (37,086 57) | (10,256 25) | (26,830 32) | 261 60% | | (112,818 75) |
| Bad Debt Collections - Internal | 0 00 | 615 38 | (615 38) | -100 00% | | 0 00 | 615 38 | (615 38) | -100 00% | | 6,769 18 |
| Bad Debt Collections - Agency | 0 00 | 1 025 63 | (1 025 63) | -100 00% | | 0 00 | 1 025 63 | (1,025 63) | -100 00% | | 11 281 93 |
| **Total Bad Debt:** | **(37,086 57)** | **(8,615.24)** | **(28,471.33)** | **-330.48%** | | **(37,086.57)** | **(8,615 24)** | **(28,471.33)** | **-330.48%** | | **(94,767.64)** |
| **Total Rental Income** | **329,047.99** | **361,280.87** | **(32,232.88)** | **-8.92%** | **Total Rental income was negative to budget by 8.92% due to GPR, no Bad Debt collections internally or from agency posted, unfavorable Write-offs and high vacancy loss from takeover.** | **329,047.99** | **361,280.87** | **(32,232.88)** | **-8.92%** | | **3,982,520.61** |
| **Other Operating Income** | | | | | | | | | | | |
| **Other Income** | | | | | | | | | | | |
| Application Fees | 1,560 00 | 801 38 | 758 62 | 94 66% | Favorable to budget due to collected 31 fees vs 16 budgeted | 1,560 00 | 801 38 | 758 62 | 94 66% | | 10,361 87 |
| Administrative Fees | 1,175 00 | 291 41 | 883 59 | 303 21% | Favorable to budget due to collected 9 fees vs 2 budgeted | 1,175 00 | 291 41 | 883 59 | 303 21% | | 3,767 94 |
| Pet Fees - One-time | 0 00 | 320 55 | (320 55) | -100 00% | | 0 00 | 320 55 | (320 55) | -100 00% | | 4,144 74 |
| Late Fees | 4 841 29 | 4 006 60 | 834 69 | 20 83% | Favorable to budget due to solid collections of rent when late as will take no partials | 4 841 29 | 4 006 60 | 834 69 | 20 83% | | 43 947 23 |

Feb 2017

Ready





**Lease Activity**

Timber Lodge Apartments

12/01/2017 - 12/31/2017

Roach/Bedbug Buildings — Check pest control book

| Bldg-Unit | Unit Type | Resident | Notice Given | Lease End Date | Move-Out Date |
|---|---|---|---|---|---|
| 1669-1669-202 | 1 Bedroom | Sengavath, Euay | 12/2/2017 | 8/13/2018 | 12/13/2017 |
| 1689-1689-102 | 1 Bedroom | Kealakai, Kahealani | 12/1/2017 | 4/23/2018 | 12/1/2017 |
| 1729-1729-104 | 1 Bedroom | Garcia, Jorge | 12/11/2017 | 7/18/2018 | 12/11/2017 |
| 1729-1729-200 | 1 Bedroom | Blount, Carson | 10/20/2017 | 12/20/2017 | 12/19/2017 |
| 1729-1729-304 | 1 Bedroom | Klein, Travis | 12/5/2017 | 5/14/2018 | 12/5/2017 |
| 1749-1749-102 | 1 Bedroom | Ramirez-Crespo, Jose | 12/1/2017 | 10/6/2018 | 12/20/2017 |
| 1749-1749-106 | 1 Bedroom | Torres, Marco | 12/11/2017 | 9/30/2018 | 12/11/2017 |
| 1769-1769-303 | 2 Bedroom | Cox, Kristina | 12/7/2017 | 5/2/2018 | 12/7/2017 |
| 1769-1769-304 | 2 Bedroom | Aguirre, Pedro | 12/6/2017 | 11/30/2018 | 12/8/2017 |
| 1800-1800-108 | 1 Bedroom | Marquez-Moreno, Adriana | 12/26/2017 | 12/26/2017 | 12/26/2017 |
| 1800-1800-307 | 1 Bedroom | Cole, Charles | 10/27/2017 | 6/12/2018 | 12/27/2017 |
| 1809-1809-103 | 2 Bedroom | Soto, Carlos | 12/11/2017 | 12/11/2017 | 12/11/2017 |
| 1820-1820-209 | 1 Bedroom | Colomo Chavira, Leslie | 10/20/2017 | 12/24/2017 | 12/24/2017 |
| 1840-1840-203 | 2 Bedroom | Portlock, Christopher | 12/29/2017 | 3/21/2018 | [illegible] |
| 1840-1840-204 | 2 Bedroom | Miller Richard | 12/29/2017 | 3/29/2018 | [illegible] |
| 1840-1840-206 | 2 Bedroom | Kallas, Ryan | 12/7/2017 | 6/4/2018 | 12/7/2017 |
| 1849-1849-100 | 2 Bedroom | Rodriguez, Laura | 12/29/2017 | 2/27/2018 | [illegible] |
| 1869-1869-102 | 2 Bedroom | Romero Arcos Alejandro | 12/5/2017 | 11/5/2018 | 12/5/2017 |
| 1880-1880-100 | 2 Bedroom | Robles, Juan | 12/11/2017 | 8/27/2018 | 12/11/2017 |
| 1880-1880-304 | 2 Bedroom | Sein-Ware, Charya | 12/4/2017 | 12/4/2017 | 12/4/2017 |

Timber Lodge Apartments | Report Parameters

Ready

***Bad Debt Aspen:***

There is no increase in Bad Debt. Actual Bad Debt went down at the end of the quarter. Move-outs were moved out on-time Skips were moved out on-time. There is no inc

**Bad Debt Oct.**

| | |
|---|---|
| Bad Debt/ Write-Offs | (12,129.66) |
| Bad Debt Collections - Internal | 337.00 |
| Bad Debt Collections - Agency | 1,430.16 |
| **Bad Debt** | **(10,362.50)** |
| **Rental Income** | **412,482.89** |

**Bad Debt Nov.**

| | |
|---|---|
| Bad Debt/ Write-Offs | (4,921.97) |
| Bad Debt Collections - Internal | 1,922.00 |
| Bad Debt Collections - Agency | 1,578.86 |
| **Bad Debt** | **(1,421.11)** |

13

| | |
|---|---|
| **Rental Income** | **416,160.59** |
| **Bad Debt Dec.** | |
| Bad Debt/ Write-Offs | (5,102.73) |
| Bad Debt Collections - Internal | 10.00 |
| Bad Debt Collections - Agency | 699.95 |
| **Bad Debt** | **(4,392.78)** |

*Aspen Park October Move-out Report*

Cut
Copy
Paste
Format Painter
Calibri 11
Wrap Text
Merge & Center
General
Clipboard Font Alignment Number
G69

Skipped (No Notice Given)
Flooded units Roof Leak

**Move-Outs**

| Bldg-Unit | Unit Type | Resident | Notice Given | Lease End Date | Move-Out Date | Move-Out Reason | Early Term? |
|---|---|---|---|---|---|---|---|
| 7 | 1 BR/1 BA LG | Harrison, Matthe | 8/3/2017 | 10/14/2017 | 10/14/2017 | Closer to Work | No |
| 17 | 1 BR/1 BA LG | Gonzales, Penny | 10/25/2017 | 6/1/2018 | 10/25/2017 | Skipped (No Notice Given) | Yes |
| 48 | 2 BR/2 BA | Polk Jr, Walter | 10/5/2017 | 3/23/2018 | 10/5/2017 | Skipped (No Notice Given) | Yes |
| 50 | 2 BR/2 BA | Martinez, Theres | 8/1/2017 | 10/14/2017 | 10/2/2017 | Unknown Skip Reason | Yes |
| 71 | 1 BR/1 BA | Mujkanovic, Meli | 10/4/2017 | 1/28/2018 | 10/31/2017 | Personal Concerns | Yes |
| 79 | 1 BR/1 BA | Boland, Scott | 9/1/2017 | 10/3/2017 | 10/3/2017 | Moving Closer to Work | No |
| 132 | 1 BR/1 BA | Pennington, Aarc | 10/9/2017 | 6/19/2018 | 10/9/2017 | Skipped (No Notice Given) | Yes |
| 156 | 1 BR/1 BA | Sifuentes, Fabiar | 7/31/2017 | 10/1/2017 | 10/1/2017 | Rent Too High | No |
| 170 | 1 BR/1 BA | Fitser, Katelyn | 8/23/2017 | 3/20/2018 | 10/24/2017 | Need Larger Apartment | Yes |
| 199 | 1 BR/1 BA | Dittmer, Skyler | 10/28/2017 | 5/4/2018 | 10/28/2017 | Skipped (No Notice Given) | Yes |
| 269 | 2 BR/1 BA | Sebastiani, Eva | 10/30/2017 | 7/31/2018 | 10/30/2017 | Skipped (No Notice Given) | Yes |
| 284 | 2 BR/1 BA | Delgado-Barrera, | 10/9/2017 | 7/27/2018 | 10/9/2017 | Skipped (No Notice Given) | Yes |
| 297 | 2 BR/1 BA | Gonzalez, Ameli | 10/13/2017 | 1/12/2018 | 10/13/2017 | Skipped (No Notice Given) | Yes |
| 303 | 2 BR/1 BA | Cordova, Reginal | 9/23/2017 | 11/4/2017 | 10/6/2017 | Inner-Company Transfer | Yes |
| 304 | 2 BR/1 BA | Smith, Shantile | 10/2/2017 | 4/20/2018 | 10/7/2017 | Inner-Company Transfer | Yes |
| 305 | 2 BR/1 BA | Graham, Stephai | 9/23/2017 | 6/5/2018 | 10/6/2017 | Inner-Company Transfer | Yes |
| 306 | 2 BR/1 BA | Schappaugh, Da | 9/28/2017 | 8/12/2018 | 10/3/2017 | Inner-Company Transfer | Yes |
| 307 | 2 BR/1 BA | Boland, Karen | 9/28/2017 | 7/18/2018 | 10/3/2017 | Inner-Company Transfer | Yes |
| 308 | 2 BR/1 BA | Martinez, Maria | 9/23/2017 | 10/13/2017 | 10/5/2017 | Inner-Company Transfer | Yes |
| 320 | 1 BR/1 BA | Garcia, Brittney | 10/14/2017 | 9/30/2018 | 10/31/2017 | On-Site Transfer | Yes |
| 344 | 2 BR/1 BA | Roberts, Linda | 8/12/2017 | 10/15/2017 | 10/15/2017 | Personal Concerns | No |
| 379 | 1 BR/1 BA | Lewis, Ross | 9/8/2017 | 10/8/2017 | 10/8/2017 | Job Transfer / Lost Job | No |
| 386 | 1 BR/1 BA | Gonzales, Jorge | 10/23/2017 | 8/25/2018 | 10/23/2017 | No Notice Given | Yes |

**MTM**

| Bldg-Unit | Unit Type | Resident | Prior Lease Dates | Mtm Start Date | Market Rent | Scheduled Charges | Prior Lease |
|---|---|---|---|---|---|---|---|
| 97 | 1 BR/1 BA LG | Fanello, Kimberl | 10/12/2016 - 10/11 | 10/12/2017 | 1,050 00 | 1,332 00 | 1 01 |
| 257 | 2 BR/2 BA | Cantone, Debbie | 10/06/2016 - 10/04 | 10/5/2017 | 1,303 00 | 1,551 00 | 1 25 |

Aspen Park Apartments | Report Parameters

Ready

14



Charging Party contacted Ms. Antoinette Peshek at ADP and she had no record of my Counseling. All calls are recorded.

Ms. Farjardo- Maintaining me didn't bring this to my attention and went to Mr. Everett so she could get me fired. So, Ms. Farjardo could be V.P. So... Ms. Farjardo could hire her Best Friend (Conflict of interest) Patty Gonzales. Let the record show Ms. Farjardo talked about looking for another job often to befriend me into looking for another job. Second employee BO (Brittney Ornealas "Garcia") at Aspen Park- Let the record show that because I didn't termination BG when Respondent Leah wanted me to her and Mr. Everett retailiated against me and fired me instead of BO. Then fired her later.

Subpoena Emails: Charging Party to Max & Crystal Weger waiting on approval for roof leak move-outs and having to put people in hotels
Subpoena Emails from Charging Party to Mr. Everett -Regarding
Aspen Reports from last quarter
Emails from Charging Party to BO and VP regarding M/O
See Community (Aspen Park) Monthly Management Reports from Last Quarter Oct-Dec
See Community Anaylsis
See Community Catastrophic Roof leak units
See Employee Stay bonuses
See Emails from Charging Party to Respondent Leah-Regard: Brittney demotion over weekend
See Community KPI's Oct-Dec discussing down units Flooded 10/6
See Email Darren says to start Aspen on Oak Coast calls
Britt late 40 minutes to Investor Budget meeting
Britt not prepared for Capital walks with Darren and Max
See ADP Email regarding Britt termination
***Darren never allowed Regional Manager to see Management Contracts & Agreements

**Bias Investigation by Respondent HR Leah:**

| Community | Position | Status |
|---|---|---|
| **Timber** | | |
| Manager | Nancy Martin | Fired 2018 |
| Assist. Mgr | Evelyn Castro- EC | Current |
| **Aspen** | | |
| Manager | Brittney Ornelas | Fired 2018 |
| Assist Mgr. | Victoria Pena | Next Target |
| **Hidden Lake** | | |
| Manager | Nora Arredonda | Transferred to South |
| Assist. Mgr. | Erika Vera | Current-Promoted to Mgr. |
| **Villas on 76** | | |

16

| | | |
|---|---|---|
| Current Manager 2017 | Daniela Ruiz | Transferred to South |
| Manager Promoted 11/17 | Juanita Gurule | Fired 2018 |
| Assist. Mgr. | Juanita Gurule | |

LEAH- HR -Showing favoritism to the following:

- PATTY GONZALES
- ARLETTE
- DESIRE
- DAVID
- EVELYN
- PIERO GONZALES
- KAYLA
- JOSLINE

Let the record show Leah investigated on Lena Felix (age 38) because Ms. Farjardo wanted her fired. The suspended her pending investigation. Darren said, keep her she is at my biggest property and she is performing. There of Lena Felix employees walked out on her say she was threating to fire them and talking really bad to all employees and vendors. Lena age 38 was suspended and given a chance for investigation. Charging Party was retaliated against and fired immediately.

"D. STATEMENT OF CLAIMS (emails) 1 of 7 1

3003 E. Third Ave., Suite 201 I Denver, CO 80206
720-636-1693 (Phone) I 303-996-2335 (Fax)
www.bldgapartments.com

**From:** Nancy Martin
**Sent:** Monday, May 22, 2017 4:22:45 PM
**To:** Annette Ruffin
**Cc:** Evelyn Castro
**Subject:** May 19 Move outs

FYI-

These were skips for May 2 and 4-the leasing gals did receive keys on these dates.

We could not move them out prior as to keep our numbers. So Evelyn got them moved out on May 19 as we agreed to move out 4 skips to get the delinquent down but we maintained our occ.

They did not show on this last week's report since the original move out dates reverted back to when actual keys came in on the 2nd and 4th.

Does that makes sense? So thought I needed to count them out in today's KPI as really no longer in the system and will never show as move outs on future reports to keep the numbers straight.

If we don't count them out today-then occ number will be 376 not 374.

What do you think?

Nancy Martin

**Timber Lodge Apartments** a BLDG Community
1769 Coronado Parkway N | Thornton, CO 80229
303-287-5531 (Phone) I 303-287-1282 (Fax)

BLDG MANAGEMENT

2

**Evelyn Castro**

**From:** Annette Ruffin
**Sent:** Monday, May 22, 2017 6:28 PM
**To:** Nancy Martin
**Cc:** Evelyn Castro
**Subject:** Re: May 19 Move outs

Yes but if skips turned in keys that's different. We should move them out when they turn in keys. Why are we back dating move-outs.

**From:** Nancy Martin
**Sent:** Monday, May 22, 2017 5:09:56 PM
**To:** Annette Ruffin
**Cc:** Evelyn Castro
**Subject:** RE: May 19 Move outs

These were skips who happened to turn in keys without warning.

We had agreed to not move skips out without permission so did not do so until we agreed 4 could be moved out last week?

Nancy Martin

**Timber Lodge Apartments** a BLDG Community
1769 Coronado Parkway N | Thornton, CO 80229
303-287-5531 (Phone) | 303-287-1282 (Fax)
www.timberlodgeapts.com

BLDG
MANAGEMENT

**From:** Annette Ruffin
**Sent:** Monday, May 22, 2017 5:03 PM
**To:** Nancy Martin <nancy@bldgapartments.com>
**Cc:** Evelyn Castro <evelyn@bldgapartments.com>
**Subject:** Re: May 19 Move outs

We need to move people out here as soon as we get keys no later we can't wait when we receive keys they need to be moved out the same day .... were these moveouts scheduled or where they skips ... we need the report to match the availability

Thank you kindly,

Annette Ruffin
Regional Community Director

BLDG Management

3

## Nancy Martin

**From:** Annette Ruffin
**Sent:** Thursday, August 31, 2017 1:03 PM
**To:** Nancy Martin
**Subject:** FW: Concerns

FYI- Confidential

**From:** Juanita Garcia
**Sent:** Thursday, August 24, 2017 10:53 AM
**To:** Annette Ruffin <annette@bldgapartments.com>; Daniela Ruiz <Daniela@bldgapartments.com>
**Subject:** Concerns

Annette,

I just wanted to reach out to you I have a couple concerns that I would like to talk to you about. First of all I would like to thank you for giving me access to Timber lodge. I started going through the accounts yesterday and I noticed a couple of things that were a little worrisome to me. I take a lot of pride in what I do and I am the kind of person that wants to fix things that are wrong but also do not want to overstep my boundaries. I want to assure that all the items that are negative when I start to help don't affect me. For example.....

1. Move Outs- There are 10 move outs (FMO's) that have not been done as of today. These are dated back from 8/4 to now.
   Will the month of August be closed out at 0 FMOs or will I responsible to complete the ones she doesn't?
   Do I still have the 7 day deadline with FMOs at Timber as I do here at Villas? I want to makes sure I know her process.

2. Delinquency-know that you said that we do not send to Attorneys till mid-month but there is 2 units that have not been given 3 day demands also 3 with small balance that no demands have been sent out. There are a total of 5 small balances under $100.00 that we should get paid ASAP. 4 that are under $350.00 and 11 that owe the full balance. There are a total number of 20 people on the delinquency?!

3. Generated Lease- there are a total of 33 leases that have not been generated whether it be renewals or new move ins. We need to get the leasing agents to get them in and leases signed so we can deposit the $250.00 deposit on the new move ins that will help our numbers at the end of the month.

The items above are only the " Major items" I have notices thus far. Again, I just want to make sure that I will not be negatively affected by the above. Please advise.

Thank you,

**Juanita Gurule**
Assistant Community Manager

**Villas On 76th Apartments** a BLDG Management Property
2002 W. 76th Ave I Denver, CO 80221



**Evelyn Castro**

**From:** Nancy Martin
**Sent:** Wednesday, November 15, 2017 3:48 PM
**To:** Evelyn Castro; Priscilla Chavez; Estela Flores-Salcido
**Subject:** RE: MOVE OUTS

Thank you Evelyn

Nancy Martin

**Timber Lodge Apartments** a BLDG Community
1769 Coronado Parkway N | Thornton, CO 80229
303-287-5531 (Phone) | 303-287-1282 (Fax)
www.timberlodgeapts.com

**From:** Evelyn Castro
**Sent:** Wednesday, November 15, 2017 2:47 PM
**To:** Priscilla Chavez <priscilla@bldgapartments.com>; Estela Flores-Salcido <estela@bldgapartments.com>
**Cc:** Nancy Martin <nancy@bldgapartments.com>
**Subject:** MOVE OUTS

Hello Ladies,

There has been misunderstanding on move out dates. When a resident gives you keys weather they were on notice or just turning keys with no notice, it is important to STOP what you are doing and move them out immediately, they cannot wait or been put out days after. This affects the occupancy and reports when Nancy pulls this out on Mondays KPI. Please make sure you are moving them out that same day, if someone turns keys in on a Saturday please make sure to move them out on that same day. This will avoid so many issues on owners and regional, let's make sure this will not happen again.

Also, please make sure when receiving keys and they ask to bring the permits the following date we do not allow that, if they want to do that then have them bring everything the following day but will be charge the extra day. I would lie to have everything together in one move out form than 3 copies for every single thing they missed.

If you have any questions or concerns please feel free to talk to Nancy or myself to better assist you.

Thank you,

Evelyn Castro

**Timber Lodge Apartments** a BLDG Management
1769 Coronado Pkwy N | Thornton, CO 80229

5

**Evelyn Castro**

**From:** Annette Ruffin
**Sent:** Monday, November 20, 2017 12:52 PM
**To:** Nancy Martin; Nora Arredondo; Brittney Garcia; Juanita Garcia; Ericka Vera; Evelyn Castro; Victoria Pena; Mayra Manzo
**Cc:** Darren Everett
**Subject:** A/R- November

Team-

I would like for you all to forecast how many evictions you will have for the rest of the year and let me know. We need to pre-lease and push on occupancy to offset any skips and evictions.
Please remember our goal… try and collect all rents before the 20th of the month. GREAT IS THE STANDARD!!! ☺ Also, please think about how you can collect December rents early. Residents will want to buy Christmas gifts before they pay rent. Please be **pro-active** and creative at collecting rents. Assistant Managers- Email me with your plan of attack!
*Note-Please keep you're A/R Reports clean and updated as much as possible. FMO's should be completed with 7 days.

6

**Nancy Martin**

**From:** Evelyn Castro
**Sent:** Tuesday, December 19, 2017 9:31 AM
**To:** Annette Ruffin
**Cc:** Nancy Martin
**Subject:** QUESTION

Hello Annette,

Regarding the meeting yesterday, If a resident who owes rent for this month gives possession of the unit (physically turns keys in to office) do we move them out or no?

I want to ask and be on the same page, I'm aware not moving skips until end month but not sure if they turn keys in. ?

Thank you,

**Evelyn Castro**
Assistant Community Director

**Timber Lodge Apartments** a BLDG Management
1769 Coronado Pkwy N | Thornton, CO 80229
303-287-5531 (Phone) | 303-287-1282 (Fax)
www.timberlodgeapts.com | www.bldgapartments.com

7

**Nancy Martin**

| | |
|---|---|
| **From:** | Evelyn Castro |
| **Sent:** | Wednesday, December 20, 2017 3:04 PM |
| **To:** | Estela Flores-Salcido; Priscilla Chavez |
| **Cc:** | Nancy Martin |
| **Subject:** | NTV |

Ladies,

I received confirmation with Annette or regards to the move outs. You are ONLY allowed to do move outs for scheduled move outs not for skips, send those to me. If it happens on Saturday take all the info and I will move them out, just make sure you make copies of keys forwarding address etc. and leave in my desk.

Please make sure we do pull the file as we have done before, nothing will change.

If you have any questions feel free to let me or Nancy know.

Thank you,

**Evelyn Castro**
Assistant Community Director

**Timber Lodge Apartments** a BLDG Management
1769 Coronado Pkwy N | Thornton, CO 80229
303-287-5531 (Phone) | 303-287-1282 (Fax)
www.timberlodgeapts.com | www.bldgapartments.com

"D. Statement of Claims"

* Quanita (email) 1 of 4

1

From: Juanita Garcia
Sent: Thursday, January 18, 2018 9:53 AM
To: Leah Chelsa
Subject: Email

Leah,

I am sorry it has taken so long to write this, I was a little scared and I don't want any repercussions happening now or in the future. Please understand that this is because I went more than 2 years being out casted and walking on egg shells due to something I said about work not getting done.

Per our conversation Tuesday I just wanted to reiterate what we spoke about. Over the past 2 years this has not happened nor have I been asked at this community to hold move outs but I do know that other properties are doing it to

Leah - Investigation email to Quanita

2

asked at this community to hold move outs but I do know that other properties are doing it to make their numbers look better both on the north side and on the south side. This is something that has happened for a long time I can remember that I had been asked more than 2 yrs ago by 2 different managers not to move out residents. Also renewing leases with 1 signature. These are things I tried to bring up and got out casted for, and my concerns were just swept under the rug.

I feel like when I moved to Timber Lodge to help I had to go in and fix a lot of things that were wrong and it seemed like no one knew what was going on. It felt like it was a big secret and everyone was scared to ask questions. The approval process was not being done correctly, Move outs were not moved out, money orders were being held for over 3 months, and the FMO workbook was not updated. I feel like the company placed their trust in the wrong person, thinking that they were going to train both the manager and the regional the correct way, but in

3

... their trust in the wrong person, thinking that they were going to train both the manager and the regional the correct way, but in turn failed them both. I think this might of happened because it stems back to the people that initially trained this person, which I know for a fact those persons were doing things that wrong way as well.

I think that going forward, having an audit team for the company would be a tremendous help because this way we can all have the company's expectations clear It would prevent these things from happening anymore and it would ensure that not only as regions, but as a whole company we are all on the same page

I hope this email helps you make a decision on how to proceed forward. It is not my intention to

4

company we are all on the same page

I hope this email helps you make a decision on how to proceed forward. It is not my intention to get anyone in trouble I just want to ensure that your expectations are the same for everyone, because I feel that different rules apply to different people with this company.

Please let me know if there is anything else you need.

Thank you.

1 of 1

D. "Statement of Claims"

Table of Contents

Leah add policy after my termination 1 of 1

Leah She presented documentation that was not valid to use at the time

Section 1 - Governing Principles of Employment ..... 1

1-1. Welcome Statement ..... 1
1-2. Equal Employment Opportunity ..... 1
1-3. Non-Harassment ..... 3
1-4. Sexual Harassment ..... 3
1-5. Drug and Alcohol-Free Workplace ..... 4
1-6. Workplace Violence ..... 5

Section 2 - Operational Policies ..... 6

2-1. Employee Classifications ..... 6
2-2. Trial Period ..... 7
2-3. Your Employment Records ..... 7
2-4. Working Hours and Schedule ..... 7
2-5. Timekeeping Procedures ..... 7
2-6. Overtime ..... 8
2-7. Travel Time for Non-Exempt Employees ..... 8
2-8. Safe Harbor Policy for Exempt Employees ..... 9
2-9. Your Paycheck ..... 10
2-10. Direct Deposit ..... 10
2-11. Salary Advances ..... 10
2-12. Performance Reviews ..... 10
2-13. Record Retention ..... 11

Section 3 - Benefits ..... 11

3-1. Benefits Overview ..... 11
3-2. Holidays ..... 12
3-3. Maternity Leave ..... 12
3-4. Lactation Breaks ..... 12
3-5. Paid Time Off ..... 13
3-6. Insurance Programs ..... 13
3-7. Workers' Compensation ..... 13
3-8. Jury Duty Leave ..... 14
3-9. Bereavement Leave ..... 14
3-10. Voting Leave ..... 14
3-11. Long-Term Disability ..... 14
3-12. Employee Assistance Program ..... 15
3-13. Employee Referral Awards ..... 15
3-14. Employee Rental Discounts ..... 15

Section 4 - Leaves of Absence ..... 15

4-1. Military Leave ..... 15

Section 5 - General Standards of Conduct ..... 16

5-1. Workplace Conduct ..... 16

Leah responded to EEOC using newly created policy
Policy was not in place during my employment.



ADP Login | Logout | Reports - BLDG M

Secure | bldgmanagement.entrata.com

Apps | Mail - Annette Ruff | BMC INVESTMENTS | Entrata | ADP TotalSource

entrata Charges & Payments >> Resident Aged Receivables

# Resident Aged Receivables

| PROPERTY | [illegible] | [illegible] DAYS | [illegible] DAYS |
|---|---|---|---|
| [illegible] Apartments | [illegible] 563.40 | [illegible] | [illegible] |
| [illegible] Apartments | [illegible] 620.92 | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] 923.00 | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] |

Thank you kindly,

**Annette Ruffin**

**BLDG Management**
3003 E. Third Ave., Suite 201 | Denver, CO 80206
720-636-1693 (Phone) | 303-996-2335 (Fax)
www.bldgapartments.com

Did you file a charge of discrimination against defendant(s) with the Equal Employment Opportunity Commission or any other federal or state agency? (*check one*)

_X_ Yes (***You must attach a copy of the administrative charge to this complaint***)

___ No

Have you received a notice of right to sue? (*check one*)

_X_ Yes (***You must attach a copy of the notice of right to sue to this complaint***)

___ No

## F. REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "F. REQUEST FOR RELIEF."*

*I am requesting that BLDG Management pay back my yearly salary and any other bonuses that would have been received while working there to include my benefits. I want it on public record that BLDG has discriminated against me as I don't want this to happen to others. I want a letter of recommendation from BLDG Management so I can try and retain a Regional Manager position in the future. I would like my job restored. I can work remotely. Its only right to pay for any medical bills to include depression and anxiety counseling. Also to pay all legal fees and fees paid to EEOC to get the right to sue letter.*

I want a jury as well.

## G. PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

(Plaintiff's signature)

8/22/19

(Date)

(Form Revised December 2017)

(Plaintiff's signature)

8/22/2019

(Date)

(Form Revised December 2017)